UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, ) | |
| f/k/a General Motors Corp., *et al.*, ) | Case No. 09-50026 (REG) |
| ) | |
| Debtors. ) | Jointly Administered |
| ――――――――――――――――――――――) | |
| ) | |
| MOTORS LIQUIDATION COMPANY GUC ) | |
| TRUST, ) | |
| Plaintiff, ) | |
| v. ) | Adversary Proceeding |
| ) | |
| APPALOOSA INVESTMENT LIMITED ) | Case No. 12-09802 (REG) |
| PARTNERSHIP I, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ――――――――――――――――――――――) | |

DECISION AND ORDER ON CLAIMS OF
ATTORNEY-CLIENT PRIVILEGE IN REDACTED
DOCUMENTS

APPEARANCES:

DICKSTEIN SHAPIRO LLP
*Counsel for the Plaintiffs*
1633 Broadway
New York, New York 10019
By:  Eric B. Fisher  (argued)

GREENBERG TRAURIG, LLP
*Counsel for Defendant Aurelius*
200 Park Avenue
New York, New York 10166
By:  Kevin D. Finger (argued)

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE

In this contested matter in the chapter 11 case of Motors Liquidation Company (formerly General Motors), the Court has before it disputes as to claims of attorney-client privilege with respect to four documents—each a string of emails—in which claimant Aurelius Capital Management redacted the allegedly privileged matter. The claims of privilege are sustained in part and overruled in part. The Court's rulings with respect to the redactions in question follow.

## Facts

Familiarity with the underlying background and issues is assumed. For ease of reference in following the communications in question, the Court sets out the cast of characters:

| Name as Used in Docs or Decision | Full Name | Employer | Further Description (Where Applicable and Known) | Considered by Court to Be |
|---|---|---|---|---|
| "Clients" | Other Noteholder Clients of Greenberg Traurig and/or Blakes | | | Other Clients with at least Arguable Joint Interests |
| Blakes | Blake, Cassels & Graydon LLP | | Aurelius' Canadian Counsel | Lawyer for Aurelius |
| Buonomo | Laurence Buonomo | GM | GM Lawyer | Third-Party |
| Chandler | Todd Chandler | Weil | | Third-Party |
| Cheifetz | Nathan Cheiftz | Blakes | | Lawyer for Aurelius |
| CIBC | CIBC Mellon | | | Third-Party |
| Cliff | Cliff | Greenberg Traurig | | Lawyer for Aurelius |
| Deutsche Bank | Same | | | Third-Party |
| Galway | Jeff Galway | Blakes | | Lawyer for Aurelius |
| Godhard | Peter Godhard | Weil | | Third-Party |
| Golick | Steve Golick | Oslers | Partner | Third-Party |
| Graham | Victoria Graham | Oslers | Partner | Third-Party |
| Greenberg Traurig | Greenberg Traurig | | Aurelius' US Counsel | Lawyer for Aurelius |
| Gropper | Dan Gropper | Aurelius | Senior Aurelius Employee | Client |
| Huff | Pam Huff | Blakes | | Lawyer for Aurelius |

-1-

| Larry | Laurence Buonomo | GM | In-house Lawyer | Third-Party |
|---|---|---|---|---|
| Marsico | Anthony Marsico | Greenberg Traurig | | Lawyer for Aurelius |
| Neimeth | Clifford Neimeth | Greenberg Traurig | | Lawyer for Aurelius |
| Oslers | Osler, Hoskin & Harcourt LLP | | Canadian Law Firm | Counsel for GM and/or GM Canada |
| Prieto | Dennis Prieto | Aurelius | Analyst | Client |
| Sandler | Tracy Sandler | Oslers | Partner | Third-Party |
| Tony | Anthony Marsico | Greenberg Traurig | | Lawyer for Aurelius |
| Weil | Weil, Gotshal & Manges | | GM's US Counsel | Third-Party |
| Zirinsky | Bruce Zirinsky | Greenberg Traurig | Partner | Lawyer for Aurelius |
| Dennis | Dennis Prieto | Aurelius | Analyst | Client |

## Principles

The Second Circuit, applying the classic formulation in *Wigmore*, has described the attorney-client privilege to apply:

> (1) [W]here legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.[1]

The privilege exists for the purpose of encouraging full and truthful communication between an attorney and his client.[2] And it exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.[3] But because the

---

[1] *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1036 (2d Cir. 1984); *accord United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961) (citing *Wigmore* § 2292).

[2] *Urban Box Office Network v. Interfase Managers, L.P.*, 2006 WL 1004472, at *2 (S.D.N.Y. Apr. 17, 2006) (Katz, M.J.) ("***Urban Box Office***"). Because magistrate judges have developed so much experience and expertise in this area, their analysis is particularly useful.

[3] *Upjohn v. United States*, 449 U.S. 383, 390 (1981).

-2-

privilege "stands as an obstacle of sorts to the search for truth," it must be applied "only to the extent necessary to achieve its underlying goals,"[4] and "should be strictly confined within the narrowest possible limits underlying its purpose."[5]

The party claiming the benefit of the attorney-client privilege has the burden of establishing all essential elements,[6] and the claimant's burden cannot be "discharged by mere conclusory or ipse dixit assertions."[7]

The privilege generally applies to all communications made by the attorney to the client "if such communications contain legal advice or reveal confidential information on which the client seeks advice."[8] It also applies to communications made by the client to the attorney if confidential and for the purpose of seeking legal advice. But:

> *Where a communication between client and attorney does not reveal any confidential matters, the communication is not privileged.* For example, where the attorney or client is merely conveying the substance of what a third party has conveyed, the communication is not privileged.[9]

---

[4] *Urban Box Office*, 2006 WL 1004472, at *2 (quoting *XYZ Corp. v. United States (In re Keeper of the Records)*, 348 F.3d 16, 22 (1st Cir. 2003)); *see also Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P. (In re Steinhardt Partners, L.P.)*, 9 F.3d 230, 235 (2d Cir. 1993) (finding that the privilege does not apply in situations where the client's conduct does not serve to "improve[ ] the attorney-client relationship") (quoting *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981)).

[5] *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504 (2d Cir. 1991) (citations omitted).

[6] *See, e.g.*, *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *Urban Box Office*, 2006 WL 1004472, at *2 (quoting *United States v. Doe (In re Grand Jury Proceedings)*, 219 F.3d 175, 182 (2d Cir. 2000)).

[7] *von Bulow*, 811 F.2d at 146 (quoting *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965)).

[8] *P. & B. Marina, Ltd. Partnership v. Logrande*, 136 F.R.D. 50, 53 (E.D.N.Y. 1991) (Azrack, M.J.) *aff'd. on opinion below*, 136 F.R.D. 50, 52 (Weinstein, J.) ("***P. & B. Marina***") (quoting *Standard Chartered Bank v. Ayala Int'l Holdings*, 111 F.R.D. 76, 79 (S.D.N.Y. 1986)).

[9] *Urban Box Office*, 2006 WL 1004472, at *2 (emphasis added). *See also J.P. Foley & Co. v. Vanderbilt*, 65 F.R.D. 523, 526 (S.D.N.Y. 1974) (Tenney, J.) ("***Foley***") ("The privilege also extends to communications from an attorney to his client. . . . However, it does not cover an attorney's communications—whether they are in the form of information or advice—which are based upon conversations with third parties.") (Internal quotations and citations omitted); *ECDC Environmental v. New York Marine & General Insurance Co.*, 1998 WL 614478, at *9 (S.D.N.Y.

-3-

"The privilege protects communications that keep the attorney advised of developments regarding an ongoing matter for the purpose of rendering a legal opinion as well as express requests for legal advice."[10] That principle flows from another principle in the cases that a request for legal advice can be implied[11]—assuming, of course, that such a request is sufficiently clear.[12] But a party cannot sanitize information that is otherwise unprivileged by including an attorney as a copy to a communication.[13]

The Court assumes that an attorney shown as an emailed "cc" recipient may, if the circumstances otherwise so suggest, be regarded no differently than an addressee whose name was designated as a "To." Based on its own experience, the Court would tend to agree with a South Carolina district court that, from time to time, especially after the beginning of an email string, the "To" and "cc" parties on emails can become

---

June 4, 1998) (Pitman, M.J.) ("An attorney's communication to a client reporting facts learned by the attorney from a third party is not within the attorney-client privilege unless the information is included in legal analysis or advice communicated to the client."); *TVT Records, Inc. v. Island Def Jam Music Group*, 2003 WL 749801, at *2 (S.D.N.Y. Mar. 5, 2003) (Freeman, M.J.) (requiring disclosure of many documents relaying communications from third parties). Though there are differences between *Foley* and *ECDC Environmental* with respect to the extent that attorney *advice* is privileged when based on information obtained from a third party, they are uniform in holding that *information* gleaned by the attorney from a third party is not privileged.

[10]   *P. & B. Marina*, 136 F.R.D. at 53.

[11]   *See In re Omeprazole Patent Litigation*, 2005 WL 818821, at *7 (S.D.N.Y. Feb. 18, 2005) ("The request for confidential legal assistance need not be expressly stated when the request is implied."); *Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136, 144 (D. Del. 1977) ("It is not essential . . . that the request for advice be express.").

[12]   The request for legal advice can also be established by extrinsic proof. *See Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 202 (E.D.N.Y. 1988) ("[t]he privilege does not require that the request be within the four corners of the document").

[13]   For that reason, among others (including the italicized language from *Urban Box Office*, see n.9 *supra*), the Court rejects Aurelius' contention that this Court, in reliance on *Thomas v. Euro RSCG Life*, 264 F.R.D. 120 (S.D.N.Y. 2010) (Rakoff, J.) ("**Thomas**"), should extend the *Thomas* holding to find protected under the attorney-client privilege a report by one client employee to another, with a copy to lawyers, of a non-privileged communication that took place no more than about two hours earlier. *See* page 14 *infra*.

-4-

intermixed or interchanged.[14] But the Court does not believe it (or any other court) should be establishing rules of law based on the court's personal perception of the way people send email. Rather, in this Court's view, the best way of determining whether an attorney recipient was a direct or incidental recipient, and whether the attorney was given the information the attorney received for the purpose of giving legal advice, is to examine the specifics of the message, and its context, particularly the messages in the "string" that preceded and followed it.

Discussion

*1. Email AUR-GM037351-37355 (**Document 1**)*

Document 1 has seven redactions on it, with respect to messages on Thursday, June 25, 2009 at 8:32 a.m. ("**Redacted Document 1A**"); the same day, only two minutes later, at 8:34 a.m. ("**Redacted Document 1B**"); the same day at 8:50 a.m. ("**Redacted Document 1C**"); the same day, only three minutes later, at 8:53 a.m. ("**Redacted Document 1D**"); the same day at 9:34 a.m. ("**Redacted Document 1E**"); the same day at 9:47 a.m. ("**Redacted Document 1F**") and the same day at 8:54 a.m. (*sic.*, possibly because it was sent from a different time zone) ("**Redacted Document 1G**").

*(A) Redacted Document 1A*

Redacted Document 1A is from Blakes' Nathan Cheifetz to Aurelius' Dan Gropper and Dennis Prieto, and Greenberg Traurig's Anthony Marsico. While Redacted Document 1A is from a lawyer to his client (and to a lawyer at another law firm representing the same client), it does not convey legal advice, and is not deserving of the legal protection to which it would have been entitled if it did. Moreover, it merely

---

[14] *See In re New York Renu with Moistureloc Product Liability Litigation*, 2008 WL 2338552, at *10 (D.S.C. May 8, 2008) ("Sending an email by 'cc' is usually a question of convenience rather than an expression of some intent to delineate priorities.").

-5-

reports on information that the lawyer Cheifetz learned from a third party ("Funds received by DB"), which is unprivileged under cases like *Foley*.[15]

The objection to the production of Redacted Document 1A is overruled, and it must be produced in full.

*(B) Redacted Document 1B*

Redacted Document 1B, sent two minutes later, is from Gropper back to Cheifetz, and also to Prieto and Marsico. It too does not convey either legal advice or facts provided to the lawyer for the purpose of seeking legal advice.

The objection to the production of Redacted Document 1B is overruled, and it must be produced in full.

*(C) Redacted Document 1C*

Redacted Document 1C, sent about 15 minutes later (but this time from Aurelius' Prieto to his Aurelius superior Gropper, and also to Cheifetz and Marsico), likewise does not convey legal advice and is simply sent from one Aurelius employee to another, relating information learned from a third party (Deutsche Bank), and information to be sought from that third party. While lawyers were also recipients of the transmission, there is not even an implication, much less anything more express, indicating that they were furnished with this information for the purpose of legal advice.

The objection to the production of Redacted Document 1C is overruled, and it must be produced in full.

---

[15] *See* 65 F.R.D. at 526 (the attorney-client privilege "does not cover an attorney's communications—whether they are in the form of information or advice—which are based upon conversations with third parties").

*(D) Redacted Document 1D*

Redacted Document 1D, sent three minutes later, from Blakes' Cheifetz to Prieto, Gropper and Marsico, likewise does not convey legal advice. Though it announces an intention to send (in the future) an email to a larger group of clients "to bring them up to speed" (which email, if sent, very possibly would be privileged),[16] this email does not even reveal the subject matter, much less the substance, of any future advice.

The objection to the production of Redacted Document 1D is overruled, and it must be produced in full.

*(E) Redacted Document 1E*

Redacted Document 1E, sent 11 minutes later, from Gropper to Cheifetz, Prieto and Marsico (but seemingly directed to Cheifetz, though the latter two were also on the "To" line), does not convey facts to the lawyer for the purpose of seeking legal advice, nor, expressly or impliedly, ask for legal advice.

The objection to the production of Redacted Document 1E is overruled, and it must be produced in full.

*(F) Redacted Document 1F*

Redacted Document 1F, sent 13 minutes later, from Aurelius' Prieto to his superior Gropper (and nobody else), asks Gropper if he wants the other clients on the call with Wedlake, and announces that if the answer is yes, Prieto will tell Cheifetz to include them on the call. Here there is not even a communication of any kind between lawyer and client; it is simply between two Aurelius personnel. Once again, it does not disclose

---

[16] It also mentions an upcoming call with "Wedlake" (presumably either Green Hunt Wedlake or an individual at Green Hunt Wedlake by that name). Green Hunt Wedlake may have been the Noteholders' chosen trustee and/or working in concert with Aurelius and other Nova Scotia Bondholders, but it has not been shown to have been either Blakes' or Greenberg Traurig's client.

-7-

the substance of any legal advice, and since it is not to a lawyer, it does not convey any facts to the lawyer for the purpose of securing legal advice.

The objection to the production of Redacted Document 1F is overruled, and it must be produced in full.

*(G) Redacted Document 1G*

Redacted Document 1G is Aurelius' Gropper's one-word response to his subordinate Prieto's inquiry. It is from Gropper to Prieto alone. Once again, it does not disclose the substance of any legal advice, and since it is not to a lawyer, it does not convey any facts to the lawyer for the purpose of securing legal advice.

The objection to the production of Redacted Document 1G is overruled, and it must be produced in full.

2. *Email AUR_GM038120-38125 (**Document 2**)*

Document 2 has four redactions on it, with respect to messages on Thursday, June 4, 2009 at 2:44 p.m. ("**Redacted Document 2A**"); the same day at 2:48 p.m., only four minutes later ("**Redacted Document 2B**"); the same day at 3:47 p.m. ("**Redacted Document 2C**"); and the same day at 3:01 p.m. (*sic.*, possibly because it was sent from a different time zone) ("**Redacted Document 2D**").

*(A) Redacted Document 2A*

Redacted Document 2A follows a series of earlier emails to which attorneys from Oslers, Canadian counsel to GM and/or GM Canada, were parties, relating to a consent to the commencement of insolvency proceedings for "Finance," which the Court understands to be GM Nova Scotia Finance. Redacted Document 2A, from Blakes' Huff to Aurelius' Gropper (with cc's to her Blakes colleagues), describes both her communications with a third-party (Oslers), and legal communications.

-8-

The first sentence of the first paragraph ("I have been pursing Oslers for the executed consent to bankruptcy of Finance") describes a communication with a third-party and is not privileged.[17]  Likewise, the third sentence of the first paragraph ("I gave them the draft consent on Monday") merely describes an action (the delivery of a document) to the third party, and likewise is not privileged.  The remainder of the first paragraph describes her legal analysis and is privileged.

The first sentence of the second paragraph ("I was told by Oslers that they had reviewed the form, it was fine, and they were just getting confirmation from NS counsel") describes what Huff was told by a third-party (Oslers) and is not privileged.  The second sentence of the second paragraph (though it may lend context to the first) may go into the area of her legal analysis and/or advice, and is privileged.

The next paragraph ("Oslers now raises a business issue.  See email below") once more describes a communication with a third-party (Oslers) and is not privileged.

The next four paragraphs evidence classic legal analysis and advice, and are privileged.  The legal advice is with respect to a business issue, but it is still of a legal, rather than a business, nature.

The next paragraph describes a communication with a third party ("I have left a message for Oslers that the settlement agreement speaks for itself, and they would be trying to renegotiate if they pursue this issue") and is not privileged.

The last substantive paragraph ("Have not heard back, but wanted you to be in the loop") merely describes the communications with the third party (or the lack of communications), and does not contain legal advice.  It is not privileged.

---

[17]　　*See Foley*.

*(B) Redacted Document 2B*

Redacted Document 2B, sent from Aurelius' Gropper back to Huff, four minutes later (with the same Blakes cc recipients and two Greenberg Traurig recipients added), responds to Redacted Document 2A. Fairly read, it represents a continuing dialogue on the legal matters discussed in Redacted Document 2A, and instructs Greenberg Traurig lawyers as to what to do next. Though Neimeth and Marsico were only cc'ed, it is plain that they were added intentionally, and that specific instructions were given to them, as if they were on the "To" line instead. It is privileged.

*(C) Redacted Document 2C*

Redacted Document 2C, which follows its predecessor by about an hour, is from Blakes' Huff back to Aurelius' Gropper, with cc's to the same people who had been copied on Redacted Document 2B. It contains a combination of unprivileged and privileged matter.

The first paragraph describes Huff's conversation with Oslers' Steve Golick (saying what Huff said to Golick and what Golick said to her), and is not privileged.

The second paragraph continues with Huff's account of what Oslers' Golick said in another three sentences. Those first three sentences (ending with "He says the commencement of the involuntary proceeding of (*sic.*) an application for a bankruptcy order under the BIA would terminate the settlement agreement") are not privileged. The remainder of the paragraph continues with Huff's analysis, and is privileged.

The third paragraph, which recites Steve Golick's suggestion to her, is not privileged.

*(D) Redacted Document 2D*

Redacted Document 2D, from Aurelius' Gropper to Huff, with cc's to the other participants who were on the earlier chain, contains a combination of privileged and unprivileged matter.

The first paragraph describes his conversation with "Larry" (*i.e.*, GM's Buonomo), a third-party, and is not privileged.

The second paragraph describes Buonomo's comments in greater detail, and likewise is not privileged, up to the first comma (*i.e.*, through "He wants us to agree not to file GMNS until after they default or after the cash moves"), after which Gropper shares his reaction with his counsel and requests advice from counsel. The clause following that comma is privileged.

3. *Email AUR_GM038690-39699 (**Document 3**)*

Document 3 has eight redactions on it, with respect to messages on Friday, July 24, 2009 (about a month after Document 1) at 3:27 p.m. ("**Redacted Document 3A**"); the same day, only four minutes later, at 3:31 p.m. ("**Redacted Document 3B**"); the following Monday, July 27, at 11:06 a.m. ("**Redacted Document 3C**"); the same day, at 12:01 p.m. ("**Redacted Document 3D**"); the same day, only one minute later, at 12:02 p.m. ("**Redacted Document 3E**"); the same day at 1:51 p.m. ("**Redacted Document 3F**"), the same day, only one minute later, at 1:52 p.m. ("**Redacted Document 3G**"), and later the same day, at 4:27 p.m. ("**Redacted Document 3H**"). It was this document that was produced to counsel for the GUC Trust, and which was quoted at ¶ 144 of the GUC Trust's complaint.

*(A) Redacted Document 3A*

Redacted Document 3A, sent Friday, July 24, follows a series of plainly unprivileged communications back and forth between Greenberg Traurig's Marsico and Todd Chandler and Peter Godhard of Weil, with respect to the Swap Agreement—in the last of which Marsico had inquired as to whether GM would disclose the swap agreements publicly and Godhard responded that he would let Marsico know after further consultations. In Redacted Document 3A, Aurelius' Prieto asked Marsico (with cc's to Gropper and Zirinsky) whether Marsico had heard from Weil yet.

Redacted Document 3A is not from a lawyer, and does not convey or disclose legal advice. Nor does it convey facts to a lawyer for the purpose of seeking legal advice. It is not privileged.

*(B) Redacted Document 3B*

Redacted Document 3B, Marsico's response to Prieto sent four minutes later, merely advises Prieto (and Gropper and Zirinsky, who had been cc'ed) that he had not yet heard from Weil. It does not convey or disclose legal advice, and is not privileged.

*(C) Redacted Document 3C*

Redacted Document 3C, Gropper's email to Marsico and Prieto (with a copy to Zirinsky), sent the following Monday, deals with the same subject matter. But it expressly asks Marsico for legal advice with respect to that matter, and provides Marsico with Gropper's views on the matter in question. It is privileged.

*(D) Redacted Document 3D*

Redacted Document 3D follows its predecessor by about an hour. It says no more than "Just tried them again at Weil," does not convey legal advice, and simply describes a communication the lawyer had (or tried to have) with a third-party. It is not privileged.

*(E) Redacted Document 3E*

Redacted Document 3E, from Aurelius' Gropper to Greenberg Traurig's Marsico and Gropper's Aurelius subordinate Prieto (with a copy to Zirinsky), asks for advice from Marsico on the subject matter of the ongoing dialogue. It contains a request for advice and is privileged.

*(F) Redacted Document 3F*

Redacted Document 3F, from Marsico to Gropper and Prieto (with a copy to Zirinsky), responds to the predecessor request for advice. It is privileged.

*(G) Redacted Document 3G*

Redacted Document 3G, from Aurelius' Gropper to his subordinate Prieto and his counsel Marsico (with a copy to Zirinksy), follows its predecessor by one minute. Though it shows each of Marsico and Prieto as "To" recipients, it contains a direction from Gropper to his subordinate Prieto, both Aurelius clients. Though Redacted Document 3G does not contain legal advice (and of course is from one client person to another), its disclosure would tend to reveal the substance of legal advice that the Court has found to be privileged, and should be held to be privileged as well.

*(H) Redacted Document 3H*

Redacted Document 3H, from Aurelius analyst Prieto to his superior Gropper, comes later that afternoon, at 4:27 p.m. It describes a conversation with "Larry" (Buonomo, of GM), a third-party (which from the chain of emails obviously took place no earlier than the 1:52 p.m. message, see Redacted Document 3G, about 2-1/2 hours earlier), and in particular reveals, in five sentences, what Buonomo said. Though it provides copies to Zirinsky and Marsico, it does not ask either of them, expressly or

-13-

impliedly, for legal advice. In fact, it begins with "Dan, I spoke to Larry."[18] It is principally simply a junior employee briefing a more senior employee on a conversation with a third-party, and keeping the lawyers informed as to what he told his boss. Sending copies to counsel does not cloak his report to his superior with privilege.

The Court has considered, and rejected, Aurelius' argument that Document 3H should be deemed to be privileged under *Thomas*. Though the Court would have come to the same result as the *Thomas* court reached on the facts there presented,[19] the Court finds it inappropriate to try to apply broad language in *Thomas* to the facts presented here.

*Thomas* noted the holding of *Urban Box Office* (though in this Court's view, *Urban Box Office* broke no new ground in this respect) that the attorney-client privilege does not extend to communications in which the client or the attorney merely conveys information provided by a third party. But *Thomas* considered that principle to be "only true where the client is, in effect, a cipher, or where the client delivers documents from a third party to the lawyer."[20] In later remarks that better capture the essence of the holding, the *Thomas* court distinguished *Urban Box Office* on the ground that "[h]ere,

---

[18]   The email reads in full:

"Dan, I spoke with Larry. He said that prior to my call he had not heard that we asked Weil to check with GM as to whether the swap agreement could be made public. He said that he will speak with Weil about this.

Larry did say that the swap agreement is just a standard ISDA form since it was an internal transaction. He also said that there was an internal debate at GM around the time of the settlement as to whether the swap claim would be included in the wind-up claim. He did not recall additional details on this, but apparently there is a view that swap claim is not included when calculating the wind-up claim."

[19]   Ultimately, the *Thomas* court held that the privilege had been waived. But before it did so, it ruled that the privilege would otherwise apply, with language upon which Aurelius relies. This Court would agree with the *Thomas* court in result on both issues, though it would articulate its rationale on the threshold issue less broadly.

[20]   264 F.R.D. at 121 n.1.

where the client's own recollection is very much part of what is being conveyed, the privilege attaches."[21]

The Court is not persuaded that the principle noted in *Urban Box Office* is necessarily limited to instances "where the client is, in effect, a cipher, or where the client delivers documents from a third party to the lawyer." But even assuming that it is, the Prieto message to Gropper in Redacted Document 3H passes muster under that standard. Prieto was describing a conversation with a third-party to his boss (with copies to counsel) that took place in a period of a few minutes earlier to no more than 2-1/2 hours earlier. He was the relay man—a "cipher." That is in dramatic contrast to *Thomas*, where the client prepared a detailed chronology and account for the lawyer of communications to which the client was a party that went on for a period of time sufficiently long to require a chronology.[22] And underlying the *Thomas* court's conclusion was its finding that it was the client's "*own recollection* [that was] very much part of what is being conveyed."[23] That obviously is not the case here.

Redacted Document 3H is not privileged.

---

[21]    *Id.*

[22]    *Thomas*' articulation of limitations on the principles applied in *Urban Box Office* may have inappropriate breadth. In any event, this Court would not personally state in advance that the *Thomas* exceptions are the only exceptions, particularly after the Second Circuit's reminders, in cases like *Goldberger & Dubin*, see n.5 *supra*, that the privilege is an impediment to ascertaining truth, and that it should be strictly confined within the narrowest possible limits underlying its purpose. If it were necessary to articulate black-letter principles under which *Urban Box Office*'s statement of the law should be found to be limited—and the Court is not convinced that it is—the Court would prefer to state the exception more narrowly than the *Thomas* court did. The Court would say instead that when a client superimposes his or her own recollection or other thinking into an account to the lawyer of an otherwise unprivileged communication with a third-party, and where either the client's recollection or thinking might be significant as contrasted to the remarks to or from the third-party that were merely passed on, the client's comments could be privileged. On this basis, this Court would agree with the *Thomas* result.

[23]    *Thomas*, 264 F.R.D. at 122.

*4. Email AUR_GM039823-39826 (**Document 4**)*

Document 4 has three redactions on it, with respect to messages on Friday, June 26, 2009 at 10:12 a.m. ("**Redacted Document 4A**"); the same day at 10:18 a.m., only six minutes later ("**Redacted Document 4B**"); and the following Sunday, June 28, at 10:54 a.m. ("**Redacted Document 4C**").

*(A) Redacted Document 4A*

Redacted Document 4A, sent on Friday, June 26 at 10:12 a.m. from Aurelius' Gropper to Greenberg Traurig's Marsico (with copies going to Zirinsky and Prieto), asks Marsico a question of bankruptcy law. Though it doesn't use the word "advice," it is a paradigmatic example of a request for legal advice. It is privileged.

*(B) Redacted Document 4B*

Redacted Document 4B, sent six minutes later, from Marsico back to Gropper (with Zirinsky and Prieto again receiving copies), responds to that legal inquiry. It is privileged.

*(C) Redacted Document 4C*

Redacted Document 4C, sent about two days later, is from Prieto to Gropper. Zirinksy and Marsico are copied on it. The communication is of course from one Aurelius employee to another. But it is on a topic for which Zirinsky or Marsico would have been the logical people to give the advice, and a request for advice from them as to this matter (in contrast to many of the preceding matters) properly might be implied.

Normally, the attorney-client privilege protects the substance of privileged communications, and not their subject matter. Nevertheless, sometimes disclosing the subject matter necessarily discloses the substance. Though the answer to the legal question that is the subject of Redacted Document 4C is not revealed in that document,

the fact of a focused inquiry as to its subject matter, and the disclosure of the particular question under discussion, would in this Court's view tread upon substance and matters intended to be confidental.

The Court holds Redacted Document 4C to be privileged.

### Conclusion

The objections to disclosure are sustained in part and overruled in part.  Aurelius is to "un-redact" the matter described above that is not privileged under the Court's rulings, and to produce the documents in question, redacted only to the extent authorized under this decision, to the GUC Trust within seven calendar days of this date.

The GUC Trust is authorized to use content of any of the documents that are the subject of this decision to the extent that such content has been held not to be privileged.

SO ORDERED.

Dated: New York, New York          *s/Robert E. Gerber*
       May 17, 2012                United States Bankruptcy Judge